UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

ADLIH ROMO, individually,

    Plaintiff,

v.

CITY OF SWEETWATER, a municipality within the
State of Florida,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, **ADLIH ROMO** (referred to as "Plaintiff") sues Defendant, CITY OF SWEETWATER ("CITY") and alleges:

### A. JURISDICTION

1. This is an action for damages arising out of one or more violations of federal and state law detailed herein.

2. This action is brought pursuant to Title 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on Title 28 U.S.C. §1331, 1343, and Title 42 U.S.C. §1983 and the constitutional provisions mentioned above.

### B. PARTIES

3. Plaintiff Adlih Romo is a United States citizen residing in Miami-Dade County, Florida.

4. The Defendant, CITY, is a municipality located in Miami-Dade County, Florida, and is responsible, through its officers, employees, servants and agents, for enforcing the

1

regulations of the Defendant, CITY, the laws of the state of Florida and of the United States, and for ensuring that its own officers, employees, servants and agents obey the laws of the state of Florida and of the United States.

### C. SUMMARY OF THE FACTS VENUE /CLAIMS AND DAMAGES

5. On or about May 12, 2012, Defendant, CITY without legal cause, made an unreasonable detention and seizure of the Plaintiff's vehicle – a 2007 GMC truck - and then without any order of forfeiture began using the vehicle for their own "police" purposes. They caused significant damage to the vehicle in order to rig it with police lights, radio, sirens and the like. The City officers actually used the vehicle and caused Plaintiff's Sunpass account to incur significant expenses chargeable to the Plaintiff.

6. Following a court order, the vehicle was returned to the Plaintiff, but it was now significantly damaged.

### D. CUSTOMS, POLICIES AND PRACTICES

7. It is further alleged that these violations were committed as a result of the deliberate indifference of the customs, policies and practices of the Defendant CITY.

8. At all times material hereto, the Defendant City, permitted, tolerated and caused a custom, policy or practice and conduct unreasonable and illegal detention and seizures and disposal of property against the property of citizens.

9. The acts resulted in the violations alleged herein and occurred within the jurisdiction of the United States District Court, in and for the Southern District of Florida.

10. The Defendant City, through its police officers, maintained a custom, policy or practice of intruding on the Fourth and Fourteenth Amendment rights of public citizens.

11. These constitutional violations against Plaintiffs were committed as a result of the customs, policies and practices of the Defendant City. If ever there was a subdivision of the State of Florida that has customs, policies and practices creating the constitutional violations of citizens' rights, perhaps there's no greater example than in the City of Sweetwater. Indeed, it is so widespread particularly because this municipality is only eight (8) square miles with a mere population of 13,499, according to the 2010 U.S. Census Bureau.

12. The following is a non-exhaustive list which summarizes a history of past events regarding police and public corruption within the City of Sweetwater which highlight the existence of customs, policies and procedures[1] pervasive within the City of Sweetwater *for decades,* which created or fermented customs and practices leading to the constitutional violations in this case:

    a. On August 6, 2013, Sweetwater Mayor Manuel Marono was arrested by the FBI on bribery-related charges. Authorities reported that Marono received more than $40,000 in bribes since 2002. He pled guilty to a felony and was sentenced to a forty-year federal prison term.

    b. In response to the indictment against her son – Defendant Marono – Sweetwater Commissioner, Isolina Marono, asked local cops to investigate a reporter who was doing an investigative story on Manuel Marono. This led to an extension of the investigation that ended up in the discovery of misconduct by Isolina Morono herself and - a now former Defendant City officer - named Catalino Rodriguez. Rodriguez attempted to intimidate the same reporter and kill the story and

---

[1] Negligent hiring, negligent training and negligent supervision

      interview of Jennifer Munoz-Marono, the Mayor's wife. Isolina has been quoted as saying that the press as either paid off or just offed.

  c. In 2013, Federal authorities began to investigate the disappearance of thousands of dollars in cash from a Defendant City's police evidence room which disclosed the following interesting history:

      i. In 1986, Catalino Rodriguez admitted to stealing 30 boxes of bullets, a half-dozen gun holsters and 200 dresses before becoming a police officer.[2]

      ii. Catalino Rodriguez was in charge of supervising the evidence room – at the time the money went missing back then as well as the time the 2013 investigation into the money began – resigned on October 7, 2013 and was then named City Commissioner of Sweetwater the very same night.

      iii. It was later discovered that the stolen evidence – including counterfeit luxury handbags, clothes, machines for detecting counterfeit currency – were kept at a secret off-site location that Marono had authorized the use of.

  d. So far, twelve (12) Sweetwater cops have been hired despite having disciplinary incidents with other law enforcement agencies.

  e. Defendant City Detective Octavio Oliu – one of the co-defendants on this case – is currently facing state felony charges for using stolen license plates in an organized scheme to defraud. He was also suspended on paid leave for over 14 months.

---

[2] Question: "Why was he not fired?" Answer: "Custom, policy and practices"

f. Defendant City Detective William Garcia – also a co-defendant in this case - is serving nine years in federal custody for identity theft and credit card fraud.

g. Defendant City Sergeant Reny Garcia was suspended – on paid leave - pending a criminal investigation over alleged acts of corruption within the department for over 14 months.

h. Richard Brenner, a civilian red-light camera monitor was suspended from Defendant City because he was working as a police officer, including making arrests, without even being a sworn member of the department.

i. Oliu and Brenner[3] arrested a special-needs teacher after making a critical remark about Sweetwater on Facebook. The charges were subsequently dropped against the teacher, and she later sued the officers in Federal Court. The lawsuit was later settled.

j. In 2011, there was an investigation that uncovered a video showing two Defendant City police officers abusing a prisoner by grabbing a handcuffed Alberto Dominguez by the neck, throwing him on the floor, and despite the fact Alberto Dominguez received a large cut over his right eye as a result of his impact with a metal chair and falling face-first into the ground, the officer continued to grab him by the neck and twisted him. He was dragged to a cell and denied medical attention for hours. One of the officers was later identified as Paul Abreu.

   i. Alberto Dominguez filed a lawsuit naming Manuel Marono as an instrumental party in the perpetuation of police brutality and condoning such culture within the ranks of the City of Sweetwater police department.

---

[3] Who was not sworn law enforcement officer.

    ii. Police Chief Roberto Fulgueira – also a co-defendant on this case – also defended Abreu, stating that the techniques that were used on Alberto Dominguez were not ideal, but they were legal.

k. Jesus Menocal was Defendant City's Deputy Chief of Police, who was demoted in 2003, following a police brutality scandal when he was accused of witnessing an officer beat a defenseless 18-year-old resident who almost died from his injuries.

l. Jorge Oliveros was reassigned from a police administration to code enforcement after he pled guilty in 2000 to stealing cocaine from undercover agents.

m. A police horse named Maverick, purchased with city taxpayer's money, was discovered in a Homestead ranch of a former Sweetwater police lieutenant. It appears that the horse performed little or no mounted patrol duties as the promised justification for its purchase. This horse was purchased outside of city acquisition protocol. Defendant City police officers sought "private donations" from Dolphin Mall retailers convincing them that the purchase was necessary to promote high police visibility and reduce crime in the mall.

n. Reports of police corruption in the City of Sweetwater go back as far as the 1980s, when cops began to be investigated for beating up citizens.

    i. In 1985, Manuel Pardo flew to the Bahamas to testify on behalf of a former Sweetwater officer on trial for drug smuggling. Prado claimed, falsely that he was a drug agent working with the accused, a lie which eventually got him fired.

6

    iii. In 1988, Manuel Pardo was convicted and sentenced to die by lethal injection for shooting and killing nine people while conducting drug rip-offs.

o. Recently, another tentacle of police and mayoral corruption exploded when a scheme between a towing company – Southland Towing – and the Defendant City was uncovered. It turned out that Southland was really but secretly owned by Marono. The investigation, exposed a corruption scheme involving Marono, his tow company – Southland Towing, and several Sweetwater police officers including, but not limited to those named in this complaint. Once the scandal broke public, several citizens who were victimized by the scheme came forward to voice their complaints.

    iv. Marono owned Southland Towing. However, his ownership interest was disguised by another individual name Roberto Mureira. Southland had no request for proposal/bid contract with the City of Sweetwater. However, Southland managed to be used exclusively for police ordered vehicle tows. The city imposed a fixed $500.00 cash fee for the retrieval of towed vehicles. When this scandal broke, it was discovered that there was no or insufficient cash/journals and records to account for the cash collected. Based upon the amount of tows as compared to the amount of cash reported, it is clear that there were thousands of dollars of missing cash.

    v. The scam worked successfully for over a year. In addition to the illegal cash fee component, the Defendant City officers were towing vehicles, in many instances, were no tows were required. Examples are where the car was lawfully parked and or not obstructing traffic. The officers would then place a

7

police hold on the towed vehicles which went to Southland's yard. But the only authority to put a hold on a vehicle is when the vehicle is either evidence or contraband, subject to forfeiture or obviously stolen. A hold however, requires immediate action by the seizing agency's attorneys to file and properly serve a notice of attempt to forfeit and commence forfeiture proceeding under Florida statute 932.704. That did not happen.

vi. While a hold is on the vehicle, the owner cannot retrieve it. When the vehicle sits at the tow yard for 30 days, the tow facility can then impose a lien and sell the car to satisfy towing and storage fees.

vii. This happened on several occasions where citizens lost their vehicles to this illegal scam. After the 30 days, Southland would acquire a title to the vehicle but rather than sell it at public auction, it then titled the vehicle to the Defendant City, apparently for no consideration. Some of the vehicles were retrofitted with police lights and sirens with darkened windows and became official undercover/unmarked police cars. In at least one instance the Defendant City continued to use the real owner's Sunpass for several months. We have such Sunpass records. Also, in many instances personal property taken from the arrestee and or which remained inside the vehicle was never returned and or stolen from within the vehicle. The following is a list of known victims of such constitutional violations[4], some of whom have sued or filed demands against the City of Sweetwater:

  1. Abraham Herbas

---

[4] Illegal tows and/in false arrest and/in theft of property

   2. Victor Mesa
   3. Luz Torres
   4. Roger Legra
   5. Peter Daniel
   6. Arnaldo Torres
   7. Jose Cruz
   8. Lazaro Dalmouc
   9. Ernesto Mori

   p. **Exhibit A** attached shows that the FDLE just concluded an investigation of the Defendant's property and evidence room. Exhibit A is incorporated hereto in its entirety. In sum, the FDLE report revealed that 7000 items were found missing from such secured facility; items such as cash, bicycles, liquor bottles and firearms. Considering that the Defendant City has only 13,499 residents, that number is overwhelmingly shows "customs, policies and practices". Liquor bottles were found to be filled with water, tens of thousands of dollars have disappeared, 19 weapons and 19 bicycles have also gone missing.

13. Indeed, the Defendant City has even admitted that members of its Police Department stole the property. "I consider the property stolen unless I find it" said current Police Chief Placido Diaz recently. He also said, "no one else had access to that property". At that same news conference, Sweetwater Mayor Orlando Lopez said police personnel most likely retrieved or "stole" the property.

14. Even our United States Attorney recently recognized that Defendant Marono was corrupt. "This is a sad day for South Florida...this betrayal of our public trust is intolerable,"...

9

"Our democracy suffers in these cases when elected officials use their power and political influence for personal gain instead of the public good." Miami Herald, August 7, 2013.

15. Municipal liability under §1983 exists because Defendant City by and through its then and Defendants Marono and Fulgueira official promulgated city policy that led to Plaintiffs' loss.

16. The acts resulted in the violations alleged herein and occurred within the jurisdiction of the United States District Court, in and for the Southern District of Florida.

17. Furthermore, those torts also occurred within the jurisdiction of the United State District Court, in and for the Southern District of Florida.

18. Plaintiffs seek an award of damages under Title 42 U.S.C. §1983 and applicable Florida law. Plaintiffs further seek an award for court costs, and attorney's fees pursuant to 42 U.S.C. §1988 (b).

## COUNT I - WRONGFUL DETENTION/ DEPREVIATION AND TAKING OF PLAINTIFF'S PROPERTY

The Plaintiff realleges Paragraphs 1 through 18 as if fully set forth herein.

19. While Defendant CITY's police officers were acting under color of state law as officers of the Defendant, CITY, they deprived the Plaintiff of certain rights and privileges secured to her by the Constitution of the United States, including the right to be free from unlawful search and seizure under the Fourth and Fourteenth Amendments.

20. At all times material hereto, the Defendant CITY, permitted, tolerated and caused a custom, policy or practice to conduct unreasonable and illegal detention and seizures and disposal of property against the property of citizens as further described below.

21. The Defendant CITY, through its police officers, maintained a custom, policy or practice of intruding on the Fourth and Fourteenth Amendment rights of public citizens as detailed in Paragraph 6 above.

22. The Defendant CITY, has maintained a history of failure to properly hire, and/or train, and/or supervise, and/or discipline its police officers, regarding among other things, the rights secured to citizens under the Fourth and Fourteenth Amendments to the United Stated Constitution.

23. The foregoing acts, omissions, customs, polices or practices of the Defendant CITY, caused its police officers to believe they would not be investigated or sanctioned, but instead would be tolerated, with the foreseeable result that its police officers were more likely to make unlawful detentions and seizures of citizens and their property.

24. The Plaintiff has been a victim of said abuses of authority and said illegal acts were the result of the previously described customs, policies or practices of the Defendant CITY. Plaintiff was a victim of activities described in Paragraph 8 of this complaint.

25. As a direct and proximate result of the acts described above, in violation of the United States Constitution, the Plaintiff has been damaged.

**WHEREFORE**, the Plaintiff, demands judgment and compensatory damages against Defendant, CITY OF SWEETWATER, plus attorney's fees, costs, interest and all other relief this Court deems just and proper. Plaintiff also seeks and award of punitive damages

## COUNT II – NEGLIGENCE

The Plaintiff realleges paragraphs 1-18 and further states:

26. The Defendant City owed a duty to the Plaintiff to safeguard property seized from her in a reasonable manner.

11

27. The Defendant City breached that duty in a variety of ways. After seizing the vehicle, they retro-fitted it with police gear and used the vehicle putting wear and tear on it. In that use of the vehicle, they also incurred significant Sunpass charges against the Plaintiff's account for which she became legally responsible.

28. As a direct, legal and proximate cause of this breach of duty and care, the Plaintiff was damaged. The vehicle loss value because of the damage occasioned to it; because of additional miles charged against its odometer which cause additional wear and tear on the vehicle and for the Sunpass charges.

**WHEREFORE**, the Plaintiff, demands judgment and compensatory damages against Defendant, CITY OF SWEETWATER, plus attorney's fees, costs, interest and all other relief this Court deems just and proper. Plaintiff also seeks and award of punitive damages

Dated this 6th day of April, 2016.

Respectfully submitted,

s/ Richard J. Diaz

Richard J. Diaz, Esq.
3127 Ponce De Leon Blvd.
Coral Gables, FL 33134
Telephone: (305) 444-7181
Facsimile: (305) 444-8178
F.B.N. 0767697

## FLORIDA DEPARTMENT OF LAW ENFORCEMENT
### *INVESTIGATIVE REPORT*

The Florida Department of Law Enforcement (FDLE) Miami Regional Operations Center (MROC) was requested to conduct a thorough audit of the Sweetwater Police Department(SPD) Evidence Room by the new incoming Chief of Police Placido Diaz, Jr. Chief Diaz has reasons to believe that there may be missing item(s) that should be contained in the evidence room.

This Investigative Report (IR) is in furtherance of the investigative assistance concerning the inventory of the SPD Evidence Room. On Tuesday, June 2, 2015, at approximately 7:30 AM, an audit of the SPD Evidence Room was initiated by Reserve Special Agent (RSA) Tim Elder and Crime Intelligence Analyst I (CIA I) Olivia Carlo of the FDLE. Physical inventory was completed by Special Agent (SA) Francis Vetere and CIA I Carlo on Tuesday, June 23, 2015, at approximately 3:40 PM. On Thursday, June 25, 2015, at approximately 11:10 AM, SA Vetere turned over the SPD Evidence Room keys to SPD Major Aquiles Carmona in the presence of Chief Diaz and SAS Villanueva. Conduct of the physical inventory was previously documented in IR #2 and IR #3.

On Monday, July 27, 2015, CIA I Carlo completed the data entry of SPD property receipts audit/inventory into the Excel spreadsheet.

The manner of recording the items found in the evidence room was through the use of an Excel spreadsheet with columns entitled: Case #; Item #; ER location; Date; Officer's name; and Item description. The column listing "ER location" indicates the wooden shelf/cabinet location along with a specific notation of item location, as in "Box-2" or "Box-3." Individual worksheets were created in the Excel spreadsheet to differentiate item type and location: General Inventory, General Items, Weapons, Narcotics, Safe, and Bike Storage.

During the inventory, items were removed from the shelves and listed on the Excel spreadsheet. No sealed packages were opened and all items were recorded as listed/described on the attached property receipt.

The following observations were noted during the course of the audit/inventory:
- Incomplete documentation of evidence/property room access logs
- Incomplete documentation of temporary evidence/property access logs
- No uniform dual evidence control
- Incomplete property receipts:
  - Case numbers not documented

| Case Number: MI-73-2129 | Serial #: 5 |
|---|---|
| Author: Vetere, Francis Michael | Office: Miami |
| Activity Start Date: 06/02/2015 | Activity End Date: 08/07/2015 |
| Approved By: Villanueva, Addy M. | |
| Description: Sweetwater Police Department Audit/Inventory Documentation | |

*THIS REPORT IS INTENDED ONLY FOR THE USE OF THE AGENCY TO WHICH IT WAS DISSEMINATED AND MAY CONTAIN INFORMATION THAT IS EITHER PRIVILEGED OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. ITS CONTENTS ARE NOT TO BE DISTRIBUTED OUTSIDE YOUR AGENCY.*

Exhibit A

| Case Number | MI-73-2129 |
|---|---|
| IR Number | 5 |

- Seizing officer(s) not documented
- Chain of Custody incomplete
- Separate documentation of types of evidence/property
- Evidence/property disposition(s) incomplete:
    - Missing signatures
    - Destruction of evidence/property authorization(s) not attached/included
- Individual/comprehensive evidence/property logs:
    - General evidence/property
    - Narcotics
    - Valuable items
    - Weapons

Excel Spreadsheet Tabs:
- General Inventory Worksheet:
    - Evidence/property items: 8,676
    - Total number of property receipts on inventory: 2,569
    - Total number of property receipts without case numbers listed: 262
- General Property Worksheet:
    - Evidence/property items not located: 7,877
        - Total number of property receipts: 799
        - Property receipts without case numbers listed: 154
- Narcotics Cage:
    - Property receipts: 15
    - Evidence/property items not located: 44
- Weapons Worksheet:
    - Property receipt: 8
    - Weapons not located: 19
- Valuable Worksheet:
    - Property receipts: 150
    - Valuables not located: 717
- Bike Storage Worksheet:
    - Property receipts: 4
    - Bikes not located: 19

It should be noted that all counts are approximate. SPD Evidence Room Excel spreadsheet will be maintained as a related item (Inv-23).